■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD McKNIGHT, Appellant. [764 NYS2d 734] —Appeal from a judgment of Supreme Court, Erie County (Tills, J.), entered December 8, 2000, convicting defendant after a jury trial of, inter alia, robbery in the first degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of robbery in the first degree (Penal Law § 160.15 [3]), two counts of robbery in the second degree (§ 160.10 [1], [2]) and one count of assault in the second degree (§ 120.05 [6]). The contention of defendant that he was deprived of his right to confrontation by Supreme Court's admonitions to a witness is not preserved for our review (*see* CPL 470.05 [2]) and, in any event, is without merit. The court warned the witness, who was the victim and only testifying eyewitness, that, because his trial testimony was so different from his testimony before the grand jury, he may have been perjuring himself. The court assigned counsel for the witness and, after the witness consulted with counsel, the court allowed the People to continue their direct examination. Thereafter, the testimony of the witness substantially conformed to his grand jury testimony, which was extremely damaging to the defense. The defense was then given an opportunity to cross-examine the witness without restriction.

"The right[ ] to confront and cross-examine witnesses * * * ha[s] long been recognized as essential to due process" (*Chambers v Mississippi,* 410 US 284, 294 [1973]). "The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process'" (*id.* at 295). Here, while the People were allowed to extend their direct examination of the witness, the scope of defendant's cross-examination was not limited in any way, and defendant was not precluded from "delv[ing] into the witness'

* * * story to test the witness' perceptions and memory * * * [or] impeach[ing], i.e., discredit[ing], the witness" (*Davis v Alaska,* 415 US 308, 316 [1974]). There was nothing improper in the court's advising the witness "of the possibility of prosecution for perjury as a result of his conflicting versions of the same events" and assigning the witness counsel in the midst of his testimony (*People v Siegel,* 87 NY2d 536, 543 [1995]). "Faced with the need to make sure the court's truth-seeking function was not impaired * * * by witness intimidation," the court "chose a sound middle path that allowed the People a chance to rehabilitate their case to some extent, yet fully protected * * * defendant's right to cross-examination" (*People v Branch,* 83 NY2d 663, 667 [1994]).

We also reject the contention of defendant that he was denied effective assistance of counsel. Though less than vigorous, counsel's representation, viewed in its totality, was meaningful (*see People v Baldi,* 54 NY2d 137, 147 [1981]). We further conclude that the evidence, "viewed in the light most favorable to the People" (*People v Hitchcock,* 98 NY2d 586, 591 [2002]), is legally sufficient to support the conviction of robbery in the first degree. The victim testified that a gun was used by one of the participants in the commission of the crime, and the fact that the victim had been sprayed with mace prior to being robbed and assaulted merely created questions of credibility and of the weight to be accorded to his testimony, both of which "are primarily questions to be determined by the jury" (*People v Ayala,* 149 AD2d 518, 519 [1989], *lv denied* 74 NY2d 736 [1989]). The sentence is not unduly harsh or severe. Present— Hurlbutt, J.P., Scudder, Kehoe, Gorski and Lawton, JJ.